# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

DONALD MERCER
2501 Kingsway Road
Ft. Washington, MD  20744

    Plaintiff

v.

                               Case No.
                               **Jury Trial Requested**

INTER-CON Security Systems, Inc.
210 S. DeLacey Avenue
Pasadena, CA  91105

    Defendant

**Serve On:**

Paracorp, Incorporated
245 West Chase Street
Baltimore, MD  21201

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

# COMPLAINT

**I.**    **Jurisdiction**

    1.    This is a case involving detrimental reliance.

    2.    INTER-CON Security Systems, Inc. ("Inter-Con") does significant business in the District of Columbia providing security for the U.S. State Department buildings throughout the District.

    3.    Mr. Mercer worked for Inter-Con for seven (7) years on its contract for security at the U.S. State Department.

    4.    Jurisdiction is proper in the United States federal courts.

**II.     Venue**

5. Mr. Mercer is a resident of the State of Maryland and worked for seven (7) years for Inter-Con on its contract for security at the U.S. State Department.

6. Inter-Con is a nationwide corporation doing significant business in the District of Columbia for several years.

7. Inter-Con's major contract in the District of Columbia is security for the U.S. State Department.

8. Venue is proper in the District of Columbia.

**III.    Facts Underlying All Counts**

9. Paragraph 9 contains paragraphs 1 through 8 as if fully stated herein.

10. Mr. Mercer was hired by Inter-Con in 2006 as a Security Officer and worked for Inter-Con until April 19, 2013 when he was discharged for job abandonment.

11. At the time of his termination he was making approximately $80,000 annually.

12. In February of 2013, Mr. Mercer received a call to respond to an alarm in a building under his responsibility.

13. The building had an elevator key and the officer with that key was from another unit, Patrol 5.

14. Mr. Mercer called the Officer in charge of Patrol 5 to obtain the key. He was eating lunch at SA 1 and took extra time to get to Officer Mercer who was part of Patrol 6.

15. The reason Officer Mercer didn't have a key to that elevator is because it was only issued to Patrol 5.

2

16. Officer Mercer went to SA 1 to meet with Patrol 5 and obtain the elevator key.

17. After approximately thirty minutes, Officer Mercer received the key and went to the alarm site..

18. Lt. Engle, one of Mr. Mercer's supervisors, asked Mr. Mercer to write a statement about the delay and why it took so long to get to the alarm.

19. Mr. Mercer explained the situation to Lt. Engle and Mr. Justin Beekhuis, another supervisor.

20. Both Lt. Engle and Justin Beekhuis asked Mr. Mercer to write a voluntary statement regarding the delay.

21. Mr. Mercer did so and presented it to Lt. Engle.

22. Lt. Engle then wrote to Mr. Beekhuis and suggested to Mr. Beekhuis that an additional key to the elevator be made and given to the person operating as Patrol 6.

23. Lt. Engle was sympathetic to Mr. Mercer's problem responding to the alarm, not having an elevator key.

24. Thereafter, Mr. Mercer went on vacation for ten days, a regularly scheduled and approved vacation.

25. When Mr. Mercer returned to work, Lt. Engle took Mr. Mercer's work credentials and told Mr. Mercer to remove his personal belongings from company property.

26. Mr. Beekhuis explained to Officer Mercer that he could not return to work until he agreed to meet with an investigative panel to discuss the matter.

27. Officer Mercer's supervisor, Lt. Engle, wrote to Mr. Beekhuis telling Mr. Beekhuis that Officer Mercer's delay was the result of not having an elevator key.  Officer Mercer should have been issued a key to the elevator before the alarm incident.

28. Officer Mercer was escorted from the building by Officer Anderson with all his personal property.

29. Mr. Beekhuis told Officer Mercer that he needed to make an appointment with the investigative board immediately.

30. Officer Mercer called constantly but was never able to reach Mr. Beekhuis to find out when the panel would meet and was never notified by the panel concerning the investigation.

31. On April 19, 2013, Inter-Con sent a letter telling Officer Mercer to contact Mr. Beekhuis immediately.  Officer Mercer did so but Mr. Beekhuis never responded.

32. Officer Mercer never abandoned his job and had contacted Mr. Beekhuis several times asking for a date and time for the panel committee meeting on this matter.

33. On April 26, 2013, Inter-Con terminated Officer Mercer for job abandonment.

34. Officer Mercer felt that he was deliberately given the run around by Inter-Con so that Inter-Con could terminate him.

WHEREFORE, Officer Mercer demands judgment and prays this Honorable Court award him:

A.  The amounts provable in compensatory damages, back pay, and future pay;

B.   The amount provable in punitive damages;

  C. Legal Fees;

  D. Court Costs; and,

  E. Such other damages as the Court might determine in the interest of justice.

**Count I**  **Detrimental Reliance**

35. Paragraph 35 includes paragraphs 1 through 34 as if fully stated herein.

36. Detrimental Reliance occurs when a company makes a promise to an individual and then does not honor that promise to the detriment of the individual employee. In addition, the individual employee must suffer damages as a result of the detrimental reliance.

37. In the instant case, Inter-Con suspended Officer Mercer in March, 2013 because of his delay in responding to an alarm in a State Department Building.

38. When Officer Mercer returned from a previously approved vacation on March 25, 2013, Inter-Con informed him that he must appear before an investigatory panel before he could return to work.

39. Officer Mercer relied on Inter-Con's statement that there would be an investigatory panel before he could return to work.

40. Inter-Con officials never returned his calls or scheduled an investigatory panel meeting for Officer Mercer.

41. Inter-Con terminated Officer Mercer for job abandonment on April 19, 2013 even though it had failed to give Officer Mercer the promised hearing.

42. Officer Mercer knew he did nothing wrong and relied on Inter-Con's promise of a hearing before the investigatory panel.

43. Inter-Con never notified Officer Mercer of any hearing and never responded to his repeated inquiries.

44. Officer Mercer was damaged by Inter-Con's action. Inter-Con terminated Officer Mercer without having given him the promised hearing.

45. Officer Mercer relied on Inter-Con and waited while suspended without pay for almost one month for the panel hearing to be scheduled.

46. As a result of his detrimental reliance on Inter-Con, Officer Mercer lost his job and his income.

47. Officer Mercer was able to find additional employment in security at the White House at a salary of $56,000 per year, approximately $24,000 less per year than he was making at Inter-Con.

WHEREFORE, Officer Mercer demands judgment and prays this Honorable Court award him:

A. The amounts provable in compensatory damages, back pay, and future pay;

B. The amount provable in punitive damages;

C. Legal Fees;

D. Court Costs; and,

E. Such other damages as the Court might determine in the interest of justice.

Dated: August 11, 2014

Respectfully Submitted,

/s/ James C. Strouse #09557
Strouse Legal Services
5401 Twin Knolls Road, Suite 7
Columbia, Maryland 21045
410-730-7600
410-964-9018  fax
sstrousejc@aol.com